```
                                             FILED
                                        U.S. DISTRICT COURT
                                           AUGUSTA DIV.
         IN THE UNITED STATES DISTRICT COURT
                                        2012 FEB 28 PM 3: 16
       FOR THE SOUTHERN DISTRICT OF GEORGIA

                  DUBLIN DIVISION          CLERK_____
                                                SO. DIST. OF GA.
```

DONALD WAYNE TOENNIGES,          )
                                 )
         Plaintiff,               )
                                 )
    v.                           )     CV 311-083
                                 )
JOSE MORALES, Warden, et al.,    )
                                 )
         Defendants.              )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Dooly State Prison in Unadilla, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983.[1] He has paid the filing fee of $350.00 in full, and therefore, is not proceeding *in forma pauperis* ("IFP").[2] In a simultaneously filed Order, the Court granted a Request for Review under 28 U.S.C. § 1915A brought by Defendants Henderson, Ajibade, Jones, and Morales. (Doc. no. 32).

---

[1] Although Plaintiff is currently incarcerated at Dooly State Prison, his complaint concerns events that allegedly occurred at his prior places of incarceration, Calhoun State Prison ("CSP"), located in Morgan, Georgia, and Johnson State Prison ("JSP"), located in Wrightsville, Georgia. (Doc. no. 1, p. 7.)

[2] Following Plaintiff's submission of the complaint, the Court provided him with a set of basic instructions regarding the development and progression of this case. (Doc. no. 3.) In those instructions, the Court explained that Plaintiff is responsible for serving Defendants and explained how service could be accomplished. (Id. at 2.) Waivers of service have since been returned executed for Defendants Brown, Ajibade, Henderson, Jones, and Morales. (Doc. no. 16, p. 4; doc. nos. 27, 28, 29, 30.) Only Defendant Ayers remains unserved.

# I. BACKGROUND

As Plaintiff is not proceeding IFP, his complaint[3] is not subject to 28 U.S.C. § 1915(e)(2)'s screening provision. Farese v. Scherer, 342 F.3d 1223, 1228 (11th Cir. 2003) ("Logically, § 1915(e) only applies to cases in which the plaintiff is proceeding IFP"). However, because Plaintiff is a prisoner seeking redress against governmental entities, employees, or officers, his complaint is subject to screening under 28 U.S.C. § 1915A, which does not distinguish between IFP plaintiffs and non-IFP plaintiffs. 28 U.S.C. § 1915A; Thompson v. Hicks, 213 F. App'x 939, 942 (11th Cir. 2007) (*per curiam*). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may review Plaintiff's complaint and dismiss the complaint, or any part thereof, if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. See 28 U.S.C. § 1915A.

Plaintiff names the following Defendants in his complaint: (1) Dwayne Ayers, M.D., a doctor at CSP; (2) Patricia Brown, NPR, a nurse practitioner at CSP; (3) Barry Henderson, M.D., a doctor at JSP; (4) Caleb Ajibade, M.D., another doctor at JSP; (5) Tim Jones, the Warden of Care and Treatment at JSP; and (6) Jose Morales, a Warden at JSP. (Doc. no. 1,

---

[3]Following submission of his complaint (doc. nos. 1, 1-1), Plaintiff filed an "Amended Complaint by Supplement" (doc. no. 8), in which he raises an additional claim. Although the preferred method of amending a complaint is to include all claims within one document, Plaintiff is correct that Fed. R. Civ. P. 15(a) allows him to amend his pleadings once as a matter of course before responsive pleadings have been filed. Therefore, the Court will in this instance construe Plaintiff's complaint (doc. nos. 1, 1-1) with his supplemental claim (doc. no. 8). For ease of reference, the Court refers to these documents collectively as Plaintiff's "complaint." However, the Federal Rules make no provision for briefs in support of a complaint. Accordingly, the Court will disregard Plaintiff's "Brief in Support of Complaint" (doc. no. 2), including well over one hundred pages of attachments (doc. nos. 2-1, 2-2), as these filings are largely duplicative of the pleadings in his complaint and are not specifically referenced in his complaint.

pp. 1, 7; doc. no. 1-1, p. 10.) Plaintiff indicates that he is suing Defendants Ayers, Brown, Henderson, and Ajibade in their individual and official capacities. (Doc. no. 1-1, pp. 2-3, 5, 7.)

According to Plaintiff, he has been "previously diagnosed" with pain in his lower back, neck, and shoulders, and an "ortho" had opined that his left shoulder needed to be "rebuilt or replaced." (Doc. no. 1-1, pp. 2-4.) Plaintiff alleges that while he was incarcerated at CSP, Defendant Ayers was responsible for his care between July of 2008 through October of 2009. (Doc. no. 1-1, p. 2.) However, Plaintiff asserts that during this time period, he submitted several "sick calls" relating to his lower back, neck, and shoulders, but Defendant Ayers "refused to see [him]." (Id.) Somewhat confusingly, Plaintiff also alleges that Defendant Ayers obtained an "ortho's" opinion that Plaintiff's shoulder needed to be "rebuilt or replaced," but then referred Plaintiff "to yet another ortho to see if the suggested surgery was medically necessary." (Id. at 3.) Plaintiff further asserts that Defendant Ayers acted negligently by failing to request an MRI for Plaintiff's left shoulder, which one of the "orthos" had requested. (Id.)

Plaintiff further asserts that at some point while he was under Defendant Ayers' care, he had "medically approved ortho shoes," which became worn out and "the factory bottom" developed a "large hole." (Doc. no. 8, p. 2.) Plaintiff asserts that the left shoe remained in fair shape, but because the right shoe was worn down, this caused him to limp, "adding to his back, hip, and feet pain." (Id.) Plaintiff alleges that he first complained of the shoe problem in "late summer of 2008." (Id. at 3.) Plaintiff asserts that he also wrote to Defendant Ayers at an unspecified point to inform him of this problem, but was told that the shoes should last a year. (Id. at 2.) Plaintiff asserts that in March of 2009, when the year was up, he again requested

3

new shoes, but did not receive them until "August or September." (Id.)

Plaintiff further asserts that during the same time period – July of 2008 to October of 2009 – Defendant Brown also failed to treat him and was negligent in the treatment she did provide. (See id. at 3-4.) Specifically, Plaintiff asserts that in December of 2008, he saw Defendant Brown for his shoulder problem for the first time, but instead of ordering an MRI, Defendant Brown instead had an X-ray taken. (Id. at 4.) Plaintiff also asserts that at his "August physical" – he does not say what year – he again asked for treatment for his shoulder, back, and neck problems, but she "refused to address these issues" at the physical. (Id. at 4-5.)

Plaintiff next alleges that while incarcerated at JSP, Defendants Henderson and Ajibade referred him to physical therapists for his shoulder pain despite another doctor's suggestion that "surgery [was] most likely needed." (Id. at 5-9.) Plaintiff asserts that he "questioned the goal of pre-op physical therapy," but that no one would tell him what the goal of this treatment was. (Id. at 6-8.) As a result, Plaintiff asserts that he met with the physical therapist, which caused him "unnecessary pain and suffering." (Id. at 5-6.) Plaintiff also alleges that he wrote to Defendant Ajibade asking for treatment, but that Defendant Ajibade denied his request and reminded him that he had refused physical therapy. (Id. at 8-9.) Plaintiff further asserts that he has currently been approved for an MRI for his left shoulder (id. at 7), but that Defendants Henderson and Ajibade should have approved this procedure sooner (see id. at 7, 9).

Plaintiff further asserts that prior to his arrival at JSP, he was able to enjoy visitation with his family at CSP. (Id. at 9.) However, Plaintiff asserts that upon his arrival at JSP, his visitation privileges were suspended without written notice, in violation of JSP's standard operating procedure ("SOP"). (Id. at 9-10.) Plaintiff asserts that he wrote to Defendants Jones

and Morales requesting that they explain the suspension, but he received no response, which he asserts is also contrary to the SOP. (Id. at 10.)

Plaintiff also asserts that he previously brought a § 1983 action against Defendant Morales, among others, in the Middle District of Georgia in 2009, Toenniges v. Georgia Dep't of Corr., CV 109-165 (M.D. Ga. Nov. 4, 2009). (Doc. no. 1, p. 1.) Plaintiff asserts that he had "ongoing issues with the administration at JSP," including with Defendant Morales, and he would often document the issue and send it to "the administration, the Middle District Court, and the Attorney General." (Doc. no. 1-1, p. 11.) Plaintiff alleges that on or about August 16, 2010, he attempted to send such a document to Defendant Morales via certified mail, but was informed that he was "not permitted to send certified mail to the Warden." (Id.) Plaintiff further alleges that Defendant Morales called him to the mail room area and asked Plaintiff, "Are you suing me?" (Id.) Plaintiff alleges that they had a discussion, following which Defendant Morales directed the mail staff at JSP to process the certified letter. (Id.) However, Plaintiff alleges that he was transferred "[t]hat night" in retaliation for his litigation against Defendant Morales. (Id.)

In his demand for relief, Plaintiff seeks monetary damages, as well as injunctive relief related to medical treatment he is seeking. (See doc. no. 1-1, pp. 12-13.)

## II. DISCUSSION

### A. No Claim for Deliberate Indifference Against Defendants Henderson and Ajibade

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds that the complaint fails to state a claim for deliberate indifference to a serious medical need against Defendants

5

Henderson and Ajibade.

Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39; Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (noting that the deliberate indifference standard requires that a prison official to have disregarded an excessive risk of which he was actually aware).

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must show "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goebert v. Lee County, 510 F.3d 1312, 1326-27 (11th Cir. 2007); see Farmer, 511 U.S. at 837. The Eleventh Circuit has held that to state a viable Eighth Amendment claim, a prisoner must allege that the defendants acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995). Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the

conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Allegations of mere negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Additionally, the Eleventh Circuit has consistently held that a mere difference of opinion between an inmate and prison medical officials over a diagnosis or course of treatment do not support a claim of deliberate indifference. Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*); Adams, 61 F.3d at 1546; Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

The extent of Plaintiff's allegations regarding his medical treatment at JSP is that Defendants Henderson and Ajibade provided inadequate treatment for his shoulder, back, and neck problems by prescribing him physical therapy rather than surgery (doc. no. 1-1, pp. 5-9) and that they negligently failed to order an MRI for his left shoulder (id. at 9). First, assuming that Plaintiff's shoulder, neck, and back problems constitute an objectively serious medical need, Plaintiff's allegations are insufficient to support a claim that Defendants Henderson or Ajibade were deliberately indifferent to that need. Plaintiff's allegations evince merely a difference in judgment regarding treatment, which is insufficient to establish deliberate indifference to Plaintiff's medical needs. Waldrop, 871 F.2d at 1033. Second, Plaintiff's allegations of negligence likewise do not amount to a claim of deliberate indifference. Harris, 941 F.2d at 1505; see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

Plaintiff has therefore failed to allege medical care that is "so grossly incompetent,

7

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Adams, 61 F.3d at 1544. Accordingly, Plaintiff has failed to state a claim against Defendants Henderson and Ajibade for deliberate indifference to a serious medical need.

### B. Claims Against Defendants Ayers and Brown are Unrelated and May Not Be Brought in this Action

As noted above, a significant portion of Plaintiff's complaint consists of allegations that prison staff at CSP – Defendants Ayers and Brown – showed deliberate indifference to Plaintiff's serious medical needs. However, these claims are unrelated to his other claims and may not be joined in this action. It is well settled that a plaintiff may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). "In determining what constitutes a transaction or occurrence for the purposes of Rule 20(a), courts have looked for meaning to Fed. R. Civ. P. 13(a) governing compulsory counterclaims." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by* Manders v. Lee, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003). As recognized by the Eleventh Circuit Court of Appeals in analyzing the requirements of Rule 13(a), "a claim arises out of the same transaction or occurrence if there is a logical relationship between the claims." Construction Aggregates, Ltd. v. Forest Commodities Corp., 147 F.3d 1334, 1337 n.6 (11th Cir. 1998) *(per curiam)* (citation omitted). Here, the claims that Plaintiff attempts to assert against Defendants Ayers and Brown, who treated him during his incarceration at CSP from July 2008 to October 2009, are not sufficiently related to his other claims, which concern his confinement at JSP. Although the two sets of claims share some similarities as to their legal bases, they clearly

8

involve different Defendants, different time-frames, and different prisons. Thus, they do not involve the "same transaction or occurrence."

Furthermore, CSP is located in Morgan, Georgia, situated in the Middle District of Georgia, whereas JSP is situated in the Southern District of Georgia. For an action consisting of claims against prison staff at JSP, venue is appropriate in this District, whereas for an action consisting of claims against prison staff at CSP, the proper venue is the Albany Division of the Middle District of Georgia. 28 U.S.C. § 1391(b).

In sum, it is improper to join Defendants at JSP and CSP in a single action. Plaintiff's claims against Defendants Ayers and Brown should therefore be dismissed without prejudice, and these Defendants should be dismissed from this case.[4] Should Plaintiff choose to re-file his claims against Defendants Ayers and Brown, he should do so by commencing a new action, including a new complaint and request to proceed *in forma pauperis*, in the Albany Division of the Middle District of Georgia.[5]

### C.  Claims for Injunctive Relief are Moot

In light of the Court's recommended dismissal of all of Plaintiff's claims of deliberate indifference to his serious medical needs, Plaintiff's requests for injunctive relief – which are all linked to his claims of inadequate medical treatment (doc. no. 1-1, p. 13) – are moot.

---

[4]In light of the Court's recommendation that Defendants Ayers and Brown be dismissed from this action, the Court further recommends that Defendant Brown's motion to dismiss (doc. no. 18) and motion to stay (doc. no. 19) be **DENIED** as **MOOT**. Moreover, Plaintiff's motion for more time to effect service on Defendant Ayers (doc. no. 36) should likewise be **DENIED** as **MOOT**.

[5]Plaintiff should be aware filings in a case in the Albany Division must be made with the U.S. District Court, Clerk's Office, 201 West Broad Avenue, Albany, Georgia 31701.

9

Moreover, an inmate's claim for injunctive relief against prison officials is ordinarily subject to dismissal for mootness when the prisoner is transferred to another prison and is no longer under the control of the prison officials against whom injunctive relief is sought. Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (*per curiam*); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (*per curiam*) ("Absent class certification, an inmate's claim for injunctive relief and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred.").

Here, Plaintiff requests "injunctive relief in the form of paying all medical expenses related to [his] serious medical needs as determined by his physicians for a period of ten years," as well as an order directing the GDOC to schedule a physical and psychological evaluation to determine his need for treatment and "the amount of emotional stress from years of medical neglect." (Doc. no. 1-1, p. 13.) However, since the time of the events alleged in his complaint, Plaintiff has been transferred from JSP, first to Wilcox State Prison (doc. no. 1, p. 3), and later to Dooly State Prison, where he is currently incarcerated (doc. no. 6). There is no indication that he will be transferred back to either CSP or JSP. Accordingly, his claims for injunctive relief should be dismissed as moot.

### D.     No Denial of Right to Visitation Claim

Plaintiff's assertions that Defendants Jones and Morales violated the prison SOP by suspending his visitation privileges without notice also fail to state a claim upon which relief can be granted. Inmates have no absolute constitutional right to visitation. Carabello-Sandoval v. Honsted, 35 F.3d 521, 525 (11th Cir. 1994) (*per curiam*); Lynott v. Henderson, 610 F.2d 340, 342 (5th Cir. 1980). Rather, "such privileges [are] subject to the prison authorities'

discretion provided that the visitation policies meet legitimate penological objectives." Carabello-Sandoval, 35 F.3d at 525. Here, at most, Plaintiff has alleged that Defendants Jones and Morales improperly applied prison policy. However, a violation concerning state law or policies does not amount to a constitutional violation for which Plaintiff can obtain relief under § 1983, as § 1983 is not concerned with a violation of state law/policies. Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002). Therefore, Plaintiff's claims against Defendants Jones and Morales based on his allegations that they denied him visitation in violation of the prison SOP should be dismissed.

### E. No Official Capacity Claim for Monetary Damages

In light of the analysis in the preceding sections, the only Defendant against whom Plaintiff is entitled to proceed is Defendant Morales, based on Plaintiff's allegation that Defendant Morales transferred him in retaliation for bringing a lawsuit.[6] As noted above, Plaintiff specified that he is proceeding against Defendants Ayers, Brown, Henderson, and Ajibade in both their individual and official capacities. (See doc. no. 1-1, pp. 2-3, 5, 7.) However, to the extent Plaintiff seeks an award of monetary damages against Defendant Morales (id. at 12-13), such a claim is barred against Defendant Morales in his official capacity. Notably, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claim for monetary relief against Defendant Morales fails as a matter of law, and it should be dismissed.

---

[6] In a simultaneously issued Order, the Court has directed Defendant Morales to file an answer to Plaintiff's complaint based on this First Amendment claim.

11

### III. PLAINTIFF'S REMAINING MOTIONS

The Court will also take this opportunity to address Plaintiff's "Motion for this Court to Take Supplemental Jurisdiction Over State Tort Claims" (doc. no. 9), "Motion to Reinstate all Plaintiffs to this Suit" (doc. no. 10), and "Rule Thirty Five Motion" (doc. no. 11).

In his first motion, Plaintiff requests that the Court take pendant jurisdiction over all state tort claims in this action. However, Plaintiff has not alleged any violations of Georgia law, or how any of Defendants' alleged actions or inactions entitle him to relief under Georgia law. Therefore, this motion should be **DENIED** as **MOOT**. (Doc. no. 9.)

Plaintiff's remaining two motions are tied to claims which the Court has recommended be dismissed. Specifically, in connection with his claim that he has been denied visitation privileges, Plaintiff seeks to "reinstate" a number of family members as Plaintiffs in this action. Yet Plaintiff's complaint only contemplates inclusion of these individuals in relation to his claim for denial of visitation. (See doc. no. 1-1, p. 10.) As the Court has recommended the dismissal of this claim, as set forth above, this motion should thus be **DENIED** as **MOOT**.[7] (Doc. no. 10.) Similarly, in connection with his claims of deliberate indifference to serious medical needs, Plaintiff's third motion requests that he undergo an orthopedic and psychological evaluation to determine the extent of his injuries. (Doc. no. 11, pp. 2-3.) The

---

[7]The individuals Plaintiff seeks to add as co-plaintiffs were originally terminated because their signatures did not appear on the complaint, contrary to Fed. R. Civ. P. 11(a) (instructing that every pleading must be signed by a party personally if that party is not represented by counsel). (Doc. no. 3, p. 1 n.1.) Plaintiff now asserts that these individuals have granted him limited power of attorney to sign his name on their behalf. (Doc. no. 10, p. 1.) As noted above, Plaintiff seeks to join these parties only in connection with his claim relating to visitation. Thus, the Court finds it unnecessary to address the viability of Plaintiff's asserted power of attorney in light of its recommendation that his claim relating to denial of visitation be dismissed.

12

Court notes that this motion essentially requests the injunctive relief he seeks in his complaint. (See doc. no. 1-1, p. 13.) As explained above, such injunctive relief is moot because it is linked to Plaintiff's claims of deliberate indifference. Thus, Plaintiff's "Rule Thirty Five Motion" should likewise be **DENIED** as **MOOT**. (Doc. no. 11.)

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the following of Plaintiff's claims be **DISMISSED**: his claims of deliberate indifference to a serious medical need against Defendants Henderson and Ajibade; his claim that he was denied visitation in violation of the prison SOP against Defendants Jones and Morales; his official capacity claim for monetary damages against Defendant Morales; and his claims for injunctive relief. The Court further **RECOMMENDS** that the following Defendants be dismissed: Defendants Ayers, Brown, Henderson, Ajibade, and Jones. In addition, the Court **RECOMMENDS** that all claims against Defendants Ayers and Brown be **DISMISSED** without prejudice. Furthermore, the Court **RECOMMENDS** that Defendant Brown's motion to dismiss and motion to stay be **DENIED** as **MOOT** (doc. nos. 18, 19) and that Plaintiff's motion for supplemental jurisdiction (doc. no. 9), "Motion to Reinstate Plaintiffs" (doc. no. 10), "Rule Thirty Five Motion" (doc. no. 11), and motion for time to effect service (doc. no. 36) be **DENIED AS MOOT**.

SO REPORTED and RECOMMENDED this ___ day of February, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

13