# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 JUN 26 PM 2: 43

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

DONALD WAYNE TOENNIGES,      )
                             )
        Plaintiff,           )
                             )
    v.                       )       CV 311-083
                             )
JOSE MORALES, Warden,        )
                             )
        Defendant.           )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff, an inmate incarcerated at Dooly State Prison located in Unadilla, Georgia,

commenced the above-captioned case *pro se* pursuant to 42 U.S.C. § 1983.[1] He has paid the

filing fee of $350.00 in full and therefore is not proceeding *in forma pauperis* ("IFP"). The

matter is presently before the Court on Defendant's "Motion to Dismiss Plaintiff's

Complaint." (Doc. no. 43.) Plaintiff opposes the motion. (Doc. no. 47.) Defendant has also

filed a reply brief in further support of his motion (doc. no. 49), to which Plaintiff filed a sur-

reply in opposition (doc. no. 51).[2] For the reasons set forth below, the Court **REPORTS** and

---

[1] Although Plaintiff is currently incarcerated at Dooly State Prison, his sole remaining claim concerns events that allegedly occurred at his prior place of incarceration, Johnson State Prison ("JSP"), located in Wrightsville, Georgia. (Doc. no. 1, p. 7.)

[2] On May 9, 2012, the Court entered an Order staying discovery. (Doc. no. 50.) On May 15, 2012, Plaintiff's "Reply to Defendant's Motion to Stay Discovery" (doc. no. 52) was untimely received by the Clerk of Court. In this filing, Plaintiff argues that the motion to stay should be denied because discovery requests he has served on Defendant will support his claim of retaliatory transfer. (Id. at 1-2.) However, Plaintiff does not indicate that he requires discovery to properly respond to the motion to dismiss, and thus there is no basis for the Court to reconsider its May 9th Order granting a stay of discovery. Of course, should the

**RECOMMENDS** that Defendant's motion to dismiss be **DENIED**.

## I.    BACKGROUND

Because Plaintiff is not proceeding IFP, his complaint is not subject to 28 U.S.C. § 1915(e)(2)'s screening provision. Farese v. Scherer, 342 F.3d 1223, 1228 (11th Cir. 2003) (*per curiam*). However, because all Defendants against whom Plaintiff sought redress are governmental employees or officers, the Court granted Defendant's request for a frivolity review (doc. no. 32) and screened the complaint pursuant to 28 U.S.C. § 1915A, which does not distinguish between IFP plaintiffs and non-IFP plaintiffs. The sole claim that the Court allowed to proceed in this case is Plaintiff's § 1983 claim against Defendant Jose Morales, the Warden at JSP, based on his allegations that Defendant transferred him from JSP to another prison in retaliation for filing a lawsuit.[3] (Doc. no. 39, pp. 5-6.) For the purpose of the motion to dismiss, the Court will recount the relevant facts as first set out when screening Plaintiff's claims.[4]

---

presiding District Judge adopt the recommendation herein, the Court's May 9, 2012, stay will no longer be in effect, and the case will proceed accordingly.

[3]Upon screening Plaintiff's complaint, the Court additionally recommended the dismissal of the remaining claims and Defendants, including Plaintiff's official capacity claim against Defendant for monetary damages. (Doc. no. 40.) The Honorable Dudley H. Bowen, Jr., United States District Judge, adopted that recommendation over Plaintiff's objections as the opinion of the District Court. (Doc. no. 48.)

[4]In screening the pleadings pursuant to § 1915A, the Court considered Plaintiff's complaint (doc. nos. 1, 1-1), as well as his "Amended Complaint by Supplement" (doc. no. 8). However, because the Federal Rules of Civil Procedure make no provision for briefs in support of a complaint, the Court disregarded from its screening Plaintiff's "Brief in Support of Complaint" (doc. no. 2), including well over one hundred pages of attachments (doc. nos. 2-1, 2-2), as these filings were largely duplicative of the pleadings in his complaint and were not specifically referenced in his complaint. (Doc. no. 39, p. 2 n.3, *adopted as opinion of District Court*, doc. no. 48.)

Plaintiff asserts that while he was incarcerated at JSP, he was litigating a previous § 1983 action in the Middle District of Georgia against Defendant and several other JSP officials: Toenniges v. Georgia Dep't of Corr., CV 109-165 (M.D. Ga. Nov. 4, 2009). (Doc. no. 1, p. 1.) According to Plaintiff, he had "ongoing issues with the administration at JSP," including with Defendant, and he asserts that he would often document these issues and send such documents to "the administration, the Middle District Court, and the Attorney General." (Doc. no. 1-1, p. 11.) Plaintiff alleges that on or about August 16, 2010, he attempted to send such a document to Defendant via certified mail, but was told that he was "not permitted to send certified mail to the Warden." (Id.) Plaintiff also alleges that Defendant called him to the mail room area and asked him, "Are you suing me?" (Id.) According to Plaintiff, he and Defendant had a discussion, following which Defendant directed JSP's mail staff to process Plaintiff's certified letter. (Id.) However, Plaintiff asserts that he was transferred "[t]hat night" from JSP to Wilcox State Prison ("WSP") in retaliation for his lawsuit against Defendant. (Id.)

The Court notes Plaintiff's assertion that shortly after he was transferred to WSP, he submitted an "out-of-time" informal grievance regarding the retaliatory transfer, which he alleges was accepted despite its untimeliness. (Doc. no. 47, pp. 2-4.) Plaintiff also asserts that when he did not receive a response to this informal grievance, he wrote to the Warden of Care and Treatment at WSP in an attempt to appeal the grievance; however, Plaintiff asserts he never received a response to this request. (Id. at 5-6.)

## II. DISCUSSION

Defendant now seeks to dismiss Plaintiff's complaint, arguing that Plaintiff failed to

3

exhaust his administrative remedies, that he failed to state a claim upon which relief can be granted, and that Defendant is entitled to qualified immunity. (See generally doc. nos. 43-1, 49.) By contrast, Plaintiff argues that he has exhausted the administrative remedies that were available to him, that he has properly stated a claim of retaliation against Defendant, and that Defendant is not entitled to qualified immunity. (Doc. nos. 47, 51.) The Court resolves the matter as follows.

### A.    Exhaustion of Administrative Remedies

#### 1.    Legal Standard

Where a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, as Defendant has here, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.
>
> . . . .
>
> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)).

Where exhaustion "is treated as a matter of abatement and not an adjudication on the merits,

4

it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

## 2. Exhaustion Requirement

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act's ("PLRA") mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). If an administrative remedy is "available," it must be exhausted to satisfy § 1997e(a). See id. at 1326 (explaining that under PLRA, courts are "to focus solely on whether an administrative remedy program is 'available'"). Under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90-91 (internal quotation omitted). If

5

a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson, 418 F.3d at 1159. Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's administrative grievance procedures.'" Salas v. Tillman, 162 F. App'x 918, 920 (11th Cir. 2006) (quoting Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999) (*per curiam*) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies."). Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

### 3.    The Administrative Grievance Process

As Defendant correctly observes, the administrative grievance procedure applicable in this case is governed by the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001. (Doc. no. 43, Ex. 1, Attach. A.) Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. Id. § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. § VI(C)(2) & (D). The SOP requires that

6

an inmate be given a response to his informal grievance within 10 calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has 5 business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2), (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

Notably, the SOP applies uniformly to "[a]ll inmates committed to the [Georgia] Department of Corrections in state facilities, private prisons, county prisons, and transitional centers." SOP IIB05-0001 § II. Thus, the SOP applies equally to JSP and to WSP. See id. The SOP also provides for instances where a grievance is filed at one prison facility regarding conditions at a different prison facility. In such a situation, "[a] copy of the grievance will be retained by the Grievance Coordinator at the inmate's current facility [and] the original grievance will be forwarded to the Grievance Coordinator at the named facility for processing." Id. at § VI(F)(5).

In support of his motion to dismiss, Defendant has produced the affidavit of Tracey

7

Lumpkin, a counselor and Acting Grievance Coordinator at JSP, as well as a record of Plaintiff's grievance history during his incarceration there. (Doc. no. 43, Ex. 1 (hereinafter "Lumpkin Aff.") & Attach. C.) These documents establish that during Plaintiff's incarceration at JSP between October 29, 2009 and August 17, 2010, he filed three informal grievances, none of which concern the allegations regarding the claim at issue. (Lumpkin Aff. ¶ 21 & Attach. B, C, D, E, & F.) Additionally, however, shortly after Plaintiff was transferred to WSP, he filed an informal grievance ("grievance 62665") on September 8, 2010, regarding his treatment at JSP. (Lumpkin Aff. ¶ 21 & Attach. G.) Specifically, in grievance 62665, Plaintiff alleged that he had been transferred out of retaliation for challenging JSP's visitation policy and "standing up for [his] right to mail the administration."[5] (Lumpkin Aff. ¶ 25 & Attach G.)

As an initial matter, Plaintiff challenges Ms. Lumpkin's affidavit, arguing that it is hearsay and should therefore be stricken. (Doc. no. 47, p. 1.) However, as Defendant correctly points out (doc. no. 49, pp. 3-4), Ms. Lumpkin's affidavit, as well as the documents attached to it that address Plaintiff's movement history, grievance history, and four grievances regarding JSP officials, fall within an exception to the hearsay rule as records of a regularly conducted business activity. Fed. R. Evid. 803(6); United States v. Dickerson, 248 F.3d 1036, 1048 (11th Cir. 2001) (explaining that business records that would otherwise be inadmissible as hearsay may be admitted where a custodian or qualified witness authenticates the records as those created as part of normal business practice). Thus, nothing

---

[5]The Court notes that Plaintiff raised claims regarding JSP's visitation policy in his previous litigation against JSP officials. See Toenniges, CV 109-165, doc. nos. 10, 11.

prevents Defendant from relying on Ms. Lumpkin's affidavit or the attached documents in his motion to dismiss.

Next, following the Turner test set forth *supra*, the Court first looks to Defendant's factual allegations. See Turner, 541 F.3d at 1082. Defendant contends that although Plaintiff submitted an informal grievance concerning his claim of retaliation on September 8, 2010, it was rejected as untimely because it was filed more than ten days after the incident occurred – August 16, 2010 – in violation of the SOP. (Doc. no. 43-1, p. 6.) Defendant further asserts that Plaintiff "did not request leave to file this informal grievance out of time for cause, nor did he attempt to resubmit his informal grievance or file a formal grievance or an appeal...." (Id.) Thus, Defendant argues, Plaintiff failed to exhaust his administrative remedies. (Id.)

By contrast, Plaintiff contends that grievance 62665 was accepted by a counselor at WSP as an out-of-time grievance, thus waiving the requirement that the informal grievance be filed within ten days of August 16, 2010. (Doc. no. 47, pp. 2-3.) In a sworn statment, Plaintiff avers that when he did not hear back within ten days of submitting the informal grievance (the length of time provided for prison officials to respond, according to the SOP), he wrote a letter to Todd Tripp, the Warden of Care and Treatment at WSP – and the party to whom the initial grievance was properly addressed – notifying him that he had not received a response and requesting an appeal form. (Id. at 5 (citing doc. no. 2, Ex. 7).) Plaintiff further avers that at no time was he informed that grievance 62665 was rejected as untimely, and he contends that by requesting an appeal form from Warden Tripp, he exhausted all available administrative remedies. (Id. at 5-6.)

9

Thus, the parties do not dispute that Plaintiff's informal grievance was filed after the ten-day period required by the SOP. They dispute, however, whether Plaintiff's informal grievance was accepted as an out-of-time grievance for good cause, and they further dispute whether Plaintiff took any actions to exhaust his administrative remedies after submitting grievance 62665. As Plaintiff's and Defendant's version of the facts conflict, the Court must take Plaintiff's allegations as true. See Turner, 541 F.3d at 1082. Thus, at this point, Plaintiff's claims are not subject to dismissal. Next, however, under Turner, the Court must make specific findings in order to resolve the disputed factual issues. Id.

### 4.      Specific Findings Regarding Exhaustion

Defendant bears the burden of proving that Plaintiff failed to exhaust all available administrative remedies. See Turner, 541 F.3d at 1082-83 (quoting Jones v. Bock, 549 U.S. 199, 216 (2007)). However, to demonstrate that administrative remedies were unavailable, Plaintiff must point to specific facts showing that prison staff inhibited him from utilizing the grievance process. See Boyd v. Corr. Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies). Notably, courts have held that prison officials may, as a result of their own conduct, become equitably estopped from relying upon § 1997e(a). See, e.g., Dole v. Chandler, 438 F.3d 804, 841 (7th Cir. 2006); Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (per curiam); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (per curiam); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001); see also Goebert v. Lee Cnty., 510 F.3d 1312, 1325 (11th Cir. 2007) (reserving the question of "how

much less than perfect compliance with administrative remedies is enough to constitute exhaustion," but noting cases from other circuits to recognize equitable estoppel and other exceptions to the exhaustion requirement).

Here, Plaintiff specifically alleges that grievance 62665 was accepted despite being out-of-time, thus waiving the timeliness requirement. (See doc. no. 47, pp. 2-3.) Plaintiff further alleges that he was never informed that grievance 62665 was rejected, and thus he would not have known to pursue the matter further; nevertheless, he attempted to appeal his grievance when he did not timely receive a response. (Id. at 2-5.)

First, it is unclear whether grievance 62665 was accepted out-of-time for good cause. While Defendant argues that Plaintiff did not seek leave to file an out-of-time grievance (doc. no. 43-1, p. 6), the record reflects that the words "out-of-time" are clearly written in Plaintiff's handwriting at the top of grievance 62665, which is addressed to Warden Tripp. (Id., Attach. G, p. 3.) Additionally, the record indicates that Warden Tripp accepted this grievance and forwarded it to JSP's grievance coordinator for further resolution because it concerned JSP – rather than WSP – officials. (Id., Attach. G, p. 2.) Defendant does not address Plaintiff's argument that his grievance was accepted despite being untimely, nor does he address what constitutes a proper request for leave to file an out-of-time grievance for good cause or why grievance 62665 is inadequate in this respect. (See doc. no. 49.) Notably, the SOP does not specify any particular manner for filing an out-of-time informal grievance for good cause.

Second, it is unclear whether Plaintiff was ever notified that grievance 62665 was rejected as untimely. The Court observes that when Warden Tripp forwarded grievance

11

62665 to JSP's grievance coordinator, he issued a letter requesting that a response be returned so that WSP could continue the informal process. (Doc. no. 43, Attach. G.) Although the word "Rejected" is written on both the grievance and Warden Tripp's letter, with the words "out-of-time" circled, it is simply unclear whether these documents were ever returned either to WSP or to Plaintiff. (See id.) By contrast, the Court notes that other of Plaintiff's informal grievances include both a memorandum indicating JSP's response to those grievances, as well as a "Counselor's Response/Resolution" written on the informal grievance forms; no such memorandum or written response appears in the record for grievance 62665.[6] (See id., Attach. D & F.) Notably, although Plaintiff points out these discrepancies in his response (doc. no. 47, p. 3), Defendant does not address this argument.

Complicating the issue is the fact that officials at both WSP and JSP appear to have been involved in the processing of grievance 62665: indeed, it may be that Warden Tripp waived the timeliness requirement by accepting Plaintiff's informal grievance but that JSP officials rejected it as untimely without the benefit of this knowledge. While Defendant has offered the affidavit of JSP's Acting Grievance Coordinator, there is no sworn statement from Warden Tripp or any other WSP official who might clarify whether grievance 62665 was indeed accepted out-of-time for good cause or whether either Plaintiff or WSP received a response from JSP regarding the grievance. Simply put, the Court will not penalize Plaintiff for any apparent mishandling of grievance 62665 by WSP or JSP officials,

---

[6]Although a third grievance Plaintiff filed at JSP did not contain such a memorandum page, it appears that the subject matter of that grievance – Plaintiff's visitation rights – was considered "resolved" because it was no longer addressable after Plaintiff was transferred to WSP. (Lumpkin Aff. ¶ 23 & Attach. E.)

particularly because the SOP clearly provides a procedure to address complaints by prisoners at one prison facility regarding conduct at another prison facility. SOP IIB05-0001 § VI(F)(5).

Moreover, even assuming Plaintiff had been aware that grievance 62665 was rejected as untimely, he has pointed to specific facts to show that he attempted to exhaust his remedies by writing a letter to Warden Tripp and requesting to appeal. (Doc. no. 2-1, p. 40.) Plaintiff further avers that although he requested an appeal form from Warden Tripp, Warden Tripp never responded to this request. (Doc. no. 47, pp. 2-3, 5, 23.) Defendant again does not address Plaintiff's argument, and instead cites <u>Harper v. Jenkin</u> for the proposition that a prisoner fails to exhaust all available remedies where he files a grievance without first seeking leave to file it out-of-time and then fails to appeal the rejection of that grievance as untimely. (Doc. no. 49, p. 3 (citing 179 F.3d at 1312).)

As Plaintiff persuasively argues, however, the facts of <u>Harper</u> are distinguishable from the instant case. (Doc. no. 51, pp. 1-2.) Unlike the prisoner in <u>Harper</u>, Plaintiff asserts that he was aware that his grievance was untimely and explained this to a counselor, who accepted his grievance despite the fact that it was out-of-time; further, rather than rejecting the grievance outright as being untimely, Warden Tripp forwarded the grievance to JSP officials. (Doc. no. 43, Attach. G; doc. no. 51, pp. 1-2.) Moreover, as Plaintiff points out, unlike the prisoner in <u>Harper</u>, he attempted to appeal when he heard no response to grievance 62665. (Doc. no. 2-1, p. 40; doc. no. 52, pp. 1-2.) Simply put, Defendant's reliance on <u>Harper</u> is misplaced in the absence of any evidence that Plaintiff's out-of-time grievance was not accepted for good cause or that Plaintiff's letter to Warden Tripp was insufficient to

13

satisfy the exhaustion requirement.

In sum, the Court finds that Defendant has not met his burden to show that Plaintiff failed to exhaust all of his available administrative remedies. Accordingly, Defendant is not entitled to dismissal on this basis.

## B. Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted

Defendant next argues that Plaintiff's entire case should be dismissed for failure to state a viable claim of retaliation. Specifically, Defendant contends that Plaintiff's claim against him should be dismissed because Plaintiff has not sufficiently alleged that he was engaged in constitutionally protected conduct when Defendant allegedly retaliated against him, and Plaintiff has failed to establish a causal connection between his conduct and the alleged retaliation. (Doc. no. 43-1, pp. 7-9.) Plaintiff, on the other hand, argues that his pleadings are sufficient to state a claim of retaliation against Defendant. (Doc. no. 47, pp. 6-9; doc. no. 51, pp. 5-7.)

### 1. Legal Standard

A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. "In essence, a movant says, 'Even if everything you allege is true, the law affords you no relief.'" Johnson v. Fleet Finance, Inc., 785 F. Supp. 1003, 1005 (S.D. Ga. 1992) (Edenfield, J.). In deciding a motion to dismiss under Rule 12(b)(6), all of the non-moving party's allegations must be presumed true and all reasonable inferences must be construed in the light most favorable to the non-moving party. Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990). Furthermore, a claim

14

should not be dismissed if the facts alleged in the complaint are sufficient to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561-62 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Moreover, granting a motion to dismiss is disfavored and rare. Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam). Finally, while factual allegations in the complaint must be taken as true when considering a motion to dismiss, there is no requirement that the Court must accept as true the plaintiff's conclusions of law. See Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985) (per curiam). With these principles in mind, the Court turns its attention to the instant motion.

## 2. Plaintiff's Complaint Sufficiently States a Retaliation Claim

Under the First Amendment, prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). A prisoner may state a cognizable § 1983 claim by alleging that the actions of prison officials "that might not otherwise be offensive to the Constitution" may be brought "within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). To state a claim of retaliation, the Eleventh Circuit has explained a prisoner must show that: "(1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech." Moton v.

15

Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011) (citations omitted). In Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005), the Court of Appeals clarified that "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights." Id. at 1254.

Initially, as previously noted, the Court allowed Plaintiff to proceed with a retaliation claim against Defendant when the Court screened Plaintiff's complaint pursuant to § 1915A. In addition, taking the facts alleged in Plaintiff's complaint as true – as the Court must at this stage of the pleadings – the Court finds that Plaintiff has stated a viable retaliation claim. According to Plaintiff's complaint, he was attempting to send a certified letter to Defendant but was told that this was not permitted. (See doc. no. 1-1, p. 11.) Plaintiff alleges that Defendant then called him to the mail room at JSP and asked Plaintiff, "Are you suing me?" (Id.) Plaintiff asserts that although Defendant directed JSP's mail staff to process the certified letter, he retaliated against Plaintiff by transferring him from JSP to WSP that same night. (Id.)

The Court disagrees with Defendant's conclusion that Plaintiff has failed to allege facts from which it may be reasonably inferred that he was engaged in constitutionally protected conduct. Defendant narrowly focuses on the certified letter that Plaintiff was attempting to mail, arguing that it is unclear what the contents of this letter were or how this letter was related to a lawsuit, and thus there is no way to know whether Plaintiff was engaging in a constitutionally protected act by attempting to mail the letter.[7] (Doc. no. 43-1,

---

[7]As the Court held in its recent Order granting Defendant's motion to stay, the parties may properly cite to materials outside the pleadings to determine whether Plaintiff has exhausted his administrative remedies. (Doc. no. 50, p. 3 (citing Bryant, 530 F.3d at 1376).)

p. 8.) However, the contents of the letter have little bearing on Plaintiff's claim of retaliation. Rather, Plaintiff's complaint presents allegations that in the course of a conversation he had with Defendant, Defendant either learned of or sought to confirm the existence of Plaintiff's lawsuit in the Middle District, as evidenced by Defendant's question, "Are you suing me?" (Doc. no. 1-1, p. 11.) Simply put, Plaintiff's filing of a lawsuit in the Middle District is clearly a constitutionally protected act. See Farrow, 320 F.3d at 1248.

Defendant does not argue that Plaintiff's transfer from JSP to WSP does not constitute an adverse action. Of course, the Court notes that numerous courts in this Circuit have concluded that transfers to another prison, or even the threat of a transfer, may constitute a sufficiently adverse consequence to deter a person of ordinary firmness from engaging in protected conduct. See Nichols v. Riley, 141 F. App'x 868, 869-70 (11th Cir. 2005) (per curiam) ("While an inmate does not have a constitutionally protected liberty interest against being transferred to a less agreeable prison, prison officials may not transfer, or otherwise punish, an inmate in retaliation for exercising his right to file grievances against prison officials." (internal citations omitted)); Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989) (per curiam) (explaining that plaintiff's allegations of retaliatory transfer

However, in addressing whether Plaintiff's complaint is otherwise subject to dismissal, the Court will disregard Plaintiff's Brief in Support of Complaint (doc. no. 2-1), which the Court found was not part of Plaintiff's complaint. (Doc. no. 39, p. 2 n.3, *adopted as opinion of District Court*, doc. no. 48.) The Court recognizes that Defendant cites to this document to show that the contents of Plaintiff's certified letter were unclear. (Doc. no. 43-1, p. 8.) Yet as explained herein, the contents of the letter are of little relevance for Plaintiff's retaliation claim. Of course, Plaintiff is similarly precluded from pointing to this document to address whether his complaint states a claim upon which relief can be granted, and his attempt to clarify facts presented in his Brief in Support of Complaint will not be considered here for that reason.

for filing grievances sufficiently stated a claim of retaliation despite the fact that act of transfer might not otherwise be offensive to the constitution); Sweet v. Boyd, No. 407-cv-00484, 2010 WL 940360, at \*5 (N.D. Fla. Mar. 12, 2010) (threat of transfer constitutes a sufficiently adverse consequence to deter a person of ordinary firmness from filing grievances).

With regard to the third element under Moton, the Court rejects Defendant's argument that "Plaintiff has failed to establish a causal connection between the mailing of the certified letter and his transfer to another penal institution. . . ." (Doc. no. 43-1, p. 8.) As explained above, it is Plaintiff's filing of a lawsuit, rather than his mailing of the certified letter, that constitutes the constitutionally protected conduct for which he alleges he was retaliated against. Moreover, Plaintiff's complaint can be construed as alleging that the temporal proximity between (1) Defendant's knowledge of Plaintiff's lawsuit, as well as his knowledge that he was named as a defendant in that lawsuit, and (2) the transfer (that same night) provides circumstantial evidence suggesting that Defendant transferred Plaintiff in retaliation for filing the lawsuit. See O'Bryant v. Finch, 637 F.3d 1207, 1219-20 (11th Cir. 2011) (*per curiam*) (providing that plaintiff may show causal connection between protected conduct and adverse action by presenting evidence of "retaliatory animus" on the part of defendant).

In short, Plaintiff's complaint sufficiently states a claim of retaliation that is plausible on its face because Plaintiff has provided sufficient facts for the Court to infer: (1) that he was engaged in protected conduct by filing a lawsuit in the Middle District; (2) he was transferred from JSP to WSP; and (3) that Defendant had an improper motive to transfer

18

Plaintiff – i.e., the knowledge of Plaintiff's lawsuit in the Middle District. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 561-62. Thus, Plaintiff's retaliation claim is not subject to dismissal on a Rule 12(b)(6) motion.

## C. Defendant Morales Is Not Entitled to Qualified Immunity

Finally, Defendant contends that, even if Plaintiff's claims are not subject to dismissal based upon his other arguments, Defendant is nonetheless entitled to qualified immunity. (Doc. no. 43-1, pp. 10-14.) The crux of Defendant's qualified immunity argument is that Plaintiff "cannot show that he suffered a constitutional violation" because he has failed to show that he was engaged in constitutionally protected conduct. (Id. at 12.) Furthermore, Defendant argues, "Plaintiff cannot show that clearly established law exists that would have put [him] on notice that his actions violated Plaintiff's constitutional or statutory rights." (Id. at 13.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010). For an official's acts to be within his discretionary authority, they must be "(1) undertaken pursuant to the performance of [his] duties and (2) within the scope of [his] authority." Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995); see also Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (per curiam). If the defendant shows that he was acting within his discretionary authority, then "the plaintiff must show that: (1) the defendant violated a

19

constitutional right, and (2) this right was clearly established at the time of the alleged violation." Townsend, 601 F.3d at 1158 (punctuation omitted) (quoting Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)). Furthermore, "[a] right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett, 423 F.3d at 1255 (internal citations and quotations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

Here, Defendant's qualified immunity argument is without merit. As the Court has discussed above, transferring an inmate in retaliation for filing a lawsuit violates that inmate's clearly established First Amendment rights. See Farrow, 320 F.3d at 1248 ("The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech."). Moreover, as further discussed above, there is no shortage of cases establishing that a prisoner may state a cause of action based on allegations that prison officials transferred him in retaliation for engaging in constitutionally protected conduct. See Nichols, 141 F. App'x at 869-70; Wildberger, 869 F.2d at 1468. In light of this case law, the Court rejects Defendant's contention that he was not on notice that the conduct alleged

would violate Plaintiff's constitutional rights. Accordingly, Plaintiff's claims should not be dismissed on qualified immunity grounds.

## III.   CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss be **DENIED**. (Doc. no. 43.) Should the presiding District Judge adopts these recommendations, the Clerk of Court should be **DIRECTED** to file a Scheduling Notice setting the deadlines in this case.

SO REPORTED and RECOMMENDED this 26th day of June, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE